**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ROSA MARIE JOHNSON,                           :

     Plaintiff,                                  :

vs.                                                      :        CA 11-0460-C

MICHAEL J. ASTRUE,                           :
Commissioner of Social Security,

                                     :

     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the March 28, 2012 hearing before the Court, it is determined that the Commissioner's decision

denying plaintiff benefits should be reversed and remanded for further consideration not inconsistent with this decision.[1]

Plaintiff alleges disability due to fibromyalgia. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.**
>
> **2.      The claimant has not engaged in substantial gainful activity since January 9, 2009, the alleged disability onset date. (20 CFR 404.1571 *et seq.*).**
>
> **3.      The claimant has the following severe impairment: Fibromyalgia. (20 CFR 404.1520(c)).**
>
> The medical evidence of record reflects that the claimant has a history of conservative treatment for neck and back pain, which she attributes to injuries she sustained in motor vehicle accidents in 2005 and 2006. The record also shows that the claimant has a history of treatment with neurologist Walid W. Freij, M.D. for complaints of pain and numbness in her right upper and lower extremities, as well as in her back and neck. Dr. Freij obtained cervical and lumbar MRI scans of the claimant in 2005. The lumbar MRI scan revealed no abnormalities and the cervical MRI scan showed a reversal of the cervical lordosis with shallow annular displacement and focal subligamentous disc protrusion at C5/C6 which did not appear to be neurocompressive. Dr. Freij also performed NCV/EMG testing of the claimant's right upper and lower extremities, which were unremarkable. An MRI scan of the claimant's lumbar spine subsequently obtained in January 2007 was also normal. An MRI scan of the claimant's cervical spine performed in January 2007 showed a small central disc protrusion at C5-C6.

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

On April 15, 2009, the claimant underwent a consultative physical examination by Huey Kidd, D.O. at the request of the Social Security Administration. The claimant reported having back pain, neck pain, pain all over her body, headaches, and pain and numbness in her arms and legs. Dr. Kidd's physical examination of the claimant's extremities revealed full range of motion and 5/5 strength in the upper and lower extremities. She was able to bend at her waist to approximately 80 degrees, she was able to squat and stand without difficulty, she ambulated without a limp or without any difficulty, and her deep tendon reflexes were 2/4 throughout, but she was able to touch her toes. Dr. Kidd stated his diagnostic impression as "low back pain."

The documentation of record reflects that the claimant returned to Dr. Freij on June 25, 2009, having last seen him three years earlier in 2006. The claimant presented to Dr. Freij in June 2009 with complaints of aches and pain all over, as well as numbness in her hands. Dr. Freij noted that he performed NCS/EMG testing in 2005, which showed no evidence of carpal tunnel, and that he prescribed the claimant muscle relaxants that helped her and "then she stopped coming." Dr. Freij's physical examination of the claimant in June 2009 showed tenderness over the paraspinal muscles in the cervical spine, lumbosacral spine, and thoracic spine but her strength was 5/5 in the upper and lower extremities. Dr. Freij stated that most of the claimant's aches were muscular in nature and he noted that a past MRI scan of her cervical spine showed protrusion of the disc at "C3-C4" (MRI scan indicated C5-C6, not C3-C4). He further stated that complaints in her hands might be related to carpal tunnel syndrome. Dr. Freij prescribed the claimant a muscle relaxant and recommended that she undergo repeat NCS/EMG testing of the upper and lower extremities.

On August 3, 2009, Dr. Freij completed a Clinical Assessment of Pain form on the claimant's behalf in which he stated that the claimant's pain was present to such an extent as to be distracting to the adequate performance of work activities. Dr. Freij also stated that the side effects of the claimant's prescribed medication could be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention, drowsiness, etc.

The record shows that the claimant returned to Dr. Freij three months later on September 17, 2009, at which time she reported continuing neck and back pain, as well as pain in her arms and legs. Dr. Freij noted that the claimant was "not on any medications right now." Dr. Freij concluded that fibromyalgia was a possible diagnosis of the claimant's condition. He

prescribed the claimant Savella and ordered a rheumatoid arthritis screen, the results of which were negative.

The documentation of record shows that the claimant was next seen by Dr. Freij on November 16, 2009, at which time the doctor noted that she was "diagnosed with fibromyalgia." Dr. Freij also noted that the claimant had not taken the medication that he had prescribed for her in September 2009 but that she was still on the muscle relaxant that had helped some of her pain. He indicated that the claimant was tender in her shoulders, back, and arms. Dr. Freij prescribed the claimant a more affordable medication, Elavil, and he instructed her to return to him in two months for re-evaluation. At the claimant's follow-up evaluation in January 2010, the claimant reported that the Elavil had helped her symptoms but she complained of weight gain with the medication. Dr. Freij changed the claimant's medication and referred her to physical therapy. The evidentiary record reflects that the claimant underwent physical therapy for a short period of time in February 2010 and that she experienced some improvement in her symptoms. The claimant also reported to Dr. Freij in May 2010 that the medications she was taking were providing her some relief of her symptoms, but she wanted to change medications due to adverse side effects of breast swelling and elevated Prolactin levels.

On October 3, 2010, Dr. Freij completed a second Clinical Assessment of Pain form on the claimant's behalf in which he stated that the claimant's pain was frequently present to such an extent as to be distracting to the adequate performance of work activities. Dr. Freij further stated that the claimant's medication side effects could be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention, drowsiness, etc.

The evidentiary record indicates that the claimant has a history of depression diagnosed by a neurologist which she contends was treated with antidepressant medication. In her application for Title II disability benefits, the claimant did not specifically allege a functionally limiting mental impairment, but she reported that she was taking two antidepressant medications prescribed by her treating physician.

.     .     .

The undersigned finds that the claimant's medically determinable mental impairment of Major Depressive Disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this finding, the

4

undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

.     .     .

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

**4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526).**

.     .     .

**5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she is precluded from performing any overhead work, including overhead lifting and carrying, she is limited to the performance of simple, routine, repetitive tasks, and she can adapt only to minimal changes in the work setting.**

.     .     .

The claimant alleges an inability to work because of a combination of physical and mental health problems including fibromyalgia and depression. The claimant reported that she has pain in her back, neck,

right leg, and left side and that her legs and hands get numb. The claimant stated that standing and lifting makes her pain worse. She indicated that she could lift up to 10 pounds.

When the claimant's impairments, viewed individually and in combination, are considered, the undersigned finds that the claimant is not precluded from performing a range of light work. Based on the claimant's physical impairments, the undersigned finds that the claimant is capable of lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for a total of about six hours in an eight-hour workday, and sitting for a total of about six hours in an eight-hour workday. The claimant has no postural, manipulative, visual, communicative, or environmental limitations. However, due to the claimant's disc protrusion at C3-C4, the undersigned finds that she is precluded from performing overhead work including overhead lifting and carrying and, based on Dr. Tocci's assessment of the claimant's mental functioning as set out in Exhibit 11F, which indicates that the claimant has difficulty organizing information, sequencing tasks, remembering tasks, and performing tasks in a timely manner, the claimant is limited to performing simple, routine, repetitive tasks and she can adapt only to minimal changes in the work setting.

In making the above finding as to the claimant's residual functional capacity, the undersigned Administrative Law Judge has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

The Administrative Law Judge has assigned significant evidentiary weight to the findings and conclusions of the examining physician, Dr. Huey Kidd, as set out in Exhibit 13F, as well as to the results of the objective diagnostic testing contained in the evidentiary record, particularly the results of the cervical and lumbar MRI scans performed in January 2007 as set out in Exhibit 12F at pages 6-7. The undersigned notes that based on his physical examination of the claimant in April 2009, Dr. Kidd reported that the claimant had full range of motion of her upper and lower extremities, that her strength in her upper and lower extremities was full and normal, that she was able to squat and stand without difficulty, and that she ambulated without any difficulty. These objective

clinical examination findings support a residual functional capacity for light work. Additionally, an MRI scan of the claimant's lumbar spine showed no abnormalities that would support a finding that the claimant possessed any functional limitation as a result of a lumbar spine impairment and, her cervical MRI scan was otherwise normal except for a small central disc protrusion at C5-C6.

The undersigned has also assigned significant evidentiary weight to the findings and conclusions of the examining psychologist, Dr. Nina Tocci, as set out in Exhibit 11F. Dr. Tocci's assessment of the claimant's mental functional capacity is provided for in the claimant's residual functional capacity with the limitation to simple, routine, repetitive tasks and minimal changes in the work setting.

The undersigned further finds the conclusions of the state agency psychological consultant, Donald E. Hinton, PhD., as set out in Exhibit 15F to be persuasive in reaching a conclusion regarding the severity of the claimant's medically determinable mental impairment and her mental residual functional capacity.

The Administrative Law Judge recognizes that 20 CFR 404.1527(d)(2) and Social Security Ruling 96-2p require that a treating source's medical opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence in the record. Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. Good cause exists if the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.

The undersigned Administrative Law Judge finds that, in the present case, good cause exists to justify not assigning any evidentiary weight to Dr. Freij's statements in the Clinical Assessment of Pain forms he completed on the claimant's behalf on August 9, 2009 and October 3, 2010. Dr. Freij's opinions in the Questionnaires are vague and conclusory, inasmuch as he did not provide a diagnostic basis for his responses to the questions propounded therein. The undersigned acknowledges that, in his treatment notes, Dr. Freij stated his diagnostic assessments of the claimant's condition as muscular pain and fibromyalgia. The undersigned must, therefore, assume that those are the impairments that Dr. Freij concluded caused the claimant's alleged symptomatology. However, the objective

medical evidence of record does not contain clinical examination findings or objective diagnostic evidence of impairments of such severity to support Dr. Freij's opinions that the claimant's pain resulting from those impairments is so severe as to be distracting to the adequate performance of work activities.

Another factor that undermines the credibility of and, therefore, the evidentiary weight to be given to, Dr. Freij's opinions in the Clinical Assessment of Pain forms is the total inaccuracy regarding medication side effects. Dr. Freij's opinions regarding the significant adverse impact that the claimant's "medication side effects" would have on her level of functioning is inconsistent with information contained in his treatment records. First, in June 2009, the claimant reported having no side effects from her medications. Second, when the claimant did begin reporting medication side effects, they consisted only of weight gain, breast swelling, and elevated Prolactin levels, not distraction, inattention, or drowsiness. Third, in September 2009, one month after Dr. Freij completed the first Clinical Assessment of Pain form, the claimant reported that she was not taking any medications. The record shows that four months earlier, in May 2009, the claimant told the examining psychologist Dr. Brantley that she was not taking any pain management medications. The undersigned points out that it is impossible for the claimant to experience medication side effects if she is not taking any medications.

The claimant's documented level of activities of daily living is also inconsistent with Dr. Freij's opinions of her level of pain. Although the claimant testified that her pain limits her ability to perform routine daily activities such as cooking, cleaning, and shopping, she reported that she is able to care for her own personal needs without assistance, able to handle money and pay bills, and able to drive an automobile. She also reported that she visits with others on a daily basis, either on the telephone or in person, and that she enjoys reading and watching television. The information provided by the claimant also reflects that she is able to appropriately manage her own household, which includes caring for her two teenage sons. It is also noteworthy that the record reflects that there is a significant gap of almost three years in the claimant's treatment with Dr. Freij, from April, 2006 to June 2009.

.     .     .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

**6.      The claimant is unable to perform any of her past relevant work. (20 CFR 404.1565 ).**

.      .      .

**7.      The claimant was born on April 8, 1959 and was 49 years old on the alleged disability onset date, which is defined as a younger individual age 18-49. The claimant is currently 51 years old and subsequently changed age category to that of closely approaching advanced age.  (20 CFR 404.1563).**

**8.      The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569 and 404.1569(a)).**

.      .      .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity as set out above in this decision. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of

the following representative light, unskilled occupations: (1) Cafeteria Attendant, DOT Classification Number 311.677-010, with approximately 172,000 jobs in the national economy and approximately 1,200 such jobs in the state economy; (2) School Bus Monitor, DOT Classification Number 372.667-042, with approximately 142,000 jobs in the national economy and approximately 2,800 jobs in the state economy; and (3) Production Assembler, DOT Classification Number 706.687-010, with approximately 488,000 jobs in the national economy and approximately 7,300 jobs in the state economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Other hypothetical questions were asked that elicited other responses from the vocational expert. Those questions contained residual functional capacities and hypothetical information that are inconsistent with the residual functional capacity of this decision and, accordingly, the vocational expert's responses thereto are of no probative value.

Based on the testimony of the vocational expert and, based upon the entire record evidence, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 9, 2009, through the date of this decision. (20 CFR 404.1520(g)).**

(Tr.  19-21, 22, 23, 24-26, 28, 28-29 & 29-30 (most internal citations omitted).)   The

Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision

became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is

unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In

evaluating whether the claimant has met this burden, the examiner must consider the

following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light jobs identified by the vocational expert at the hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ made the following errors: (1) she erred in both rendering a residual functional capacity assessment which is not supported by the medical opinion of any treating or examining medical source and in

---

[2]      This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

failing to adequately develop the administrative record; and (2) she erred in rejecting the opinion of Dr. Walid Freij regarding the severity of pain.

The undersigned will consider these issues, in combination, but prior to doing so it is necessary for the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one, given the defendant's consistent stance in numerous cases presently pending before this Court that in past cases this Court has conflated the fourth and fifth steps of the sequential evaluation process with respect to who has the burden of developing the evidence necessary to determine residual functional capacity. (*See* Doc. 16, at 9-13.)

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1) (2011) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. §§ 404.1545(a)(3)

& 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level under § 404.929 or at the Appeals Council review level under § 404.967, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); *see also* 20 C.F.R. § 416.946(c) (same), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id*.

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4).

> (b)  *Physical abilities.*  When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

> (c)  *Mental abilities.*  When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

> (d)  *Other abilities affected by impairment(s).*  Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial

evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra,* an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such opinion,[3] 223 Fed.Appx. at 923-924; *see also id.* at

---

[3]       An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v.* (Continued)

923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts — including this one — that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[4] *Compare, e.g.,*

---

*Commissioner of Social Security Admin.*, 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[4]      In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ — like the ALJ in *Green* — relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must — in all cases — include** an RFC or PCE from a physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination

(Continued)

16

*Saunders v. Astrue,* 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .

---

> [was] supported by substantial evidence.  [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart,* 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.

> **The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th

Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . .  There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

The Court now considers the issues raised by plaintiff, namely whether the ALJ erred both in rendering a residual functional capacity assessment not supported by the

medical opinion of any treating or examining medical source and in failing to adequately develop the administrative record and also whether the ALJ erred in rejecting the opinion of Dr. Walid Freij with regard to the severity of plaintiff's pain.

Based upon the previous legal analysis set forth above, the Court need reject plaintiff's argument that the Commissioner, through the ALJ, cannot render an RFC assessment that is not supported by the medical opinion of a treating or examining medical source. Through its decision in *Green, supra,* the Eleventh Circuit has expressly rejected this argument.   *See* 223 Fed.Appx. at 923-924. Indeed, the Eleventh Circuit indicated in *Green* that where an ALJ articulates specific reasons, supported by substantial evidence, for failing to give the RFC opinion of a treating physician controlling weight, and the ALJ properly links the remaining evidence of record (after such rejection) to the RFC assessment, such assessment can be found to be supported by substantial evidence. *See id.*[5]

---

[5]   Based upon the *Green* decision, this Court need also reject the alternative argument that the ALJ erred in failing to develop the record in this case specifically by not ordering a consultative examination and obtaining a physical residual functional capacity assessment from a consultative physician. (*See* Doc. 13, at 13-14.) As noted, as long as the ALJ properly links her RFC determination—a determination admittedly reserved to the ALJ, 20 C.F.R. §§ 404.1546(c) & 416.946(c)—to evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work, there is no requirement that the ALJ obtain a consultative examination to obtain a better picture of the claimant's RFC, 20 C.F.R. §§ 404.1519a(b) & 416.919a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."). *Compare Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources.") *with Graham v. Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997) ("Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice.").

> The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore [v. Barnhart]*, 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert, supra,* 396 Fed.Appx. at 655.

In this case, the ALJ accorded no weight to Dr. Walid Freij's two pain assessment forms, one completed on August 3, 2009 and the other on October 3, 2010, which reflect the presence of pain to such an extent as to be distracting to the adequate performance of work activities and that medication side effects can be expected to be severe and to limit plaintiff's effectiveness due to distraction, inattention, drowsiness, etc. (Tr. 333 & 376; *compare id. with* Tr. 25-26). The ALJ's analysis of the opinion evidence offered by Dr. Freij consists of the following:

> The undersigned Administrative Law Judge finds that, in the present case, good cause exists to justify not assigning any evidentiary weight to Dr. Freij's statements in the Clinical Assessment of Pain forms he completed on the claimant's behalf on August 9, 2009 and October 3, 2010. Dr. Freij's opinions in the Questionnaires are vague and conclusory, inasmuch as he did not provide a diagnostic basis for his responses to the questions propounded therein. The undersigned acknowledges that, in his treatment notes, Dr. Freij stated his diagnostic assessments of the claimant's condition as muscular pain and fibromyalgia. The undersigned must, therefore, assume that those are the impairments that Dr. Freij concluded caused the claimant's alleged symptomatology. However, the objective medical evidence of record does not contain clinical examination findings or objective diagnostic evidence of impairments of such severity to support Dr. Freij's opinions that the claimant's pain resulting from those

impairments is so severe as to be distracting to the adequate performance of work activities.

Another factor that undermines the credibility of and, therefore, the evidentiary weight to be given to, Dr. Freij's opinions in the Clinical Assessment of Pain forms is the total inaccuracy regarding medication side effects. Dr. Freij's opinions regarding the significant adverse impact that the claimant's "medication side effects" would have on her level of functioning is inconsistent with information contained in his treatment records. First, in June 2009, the claimant reported having no side effects from her medications. Second, when the claimant did begin reporting medication side effects, they consisted only of weight gain, breast swelling, and elevated Prolactin levels, not distraction, inattention, or drowsiness. Third, in September 2009, one month after Dr. Freij completed the first Clinical Assessment of Pain form, the claimant reported that she was not taking any medications. The record shows that four months earlier, in May 2009, the claimant told the examining psychologist Dr. Brantley that she was not taking any pain management medications. The undersigned points out that it is impossible for the claimant to experience medication side effects if she is not taking any medications.

The claimant's documented level of activities of daily living is also inconsistent with Dr. Freij's opinions of her level of pain. Although the claimant testified that her pain limits her ability to perform routine daily activities such as cooking, cleaning, and shopping, she reported that she is able to care for her own personal needs without assistance, able to handle money and pay bills, and able to drive an automobile. She also reported that she visits with others on a daily basis, either on the telephone or in person, and that she enjoys reading and watching television. The information provided by the claimant also reflects that she is able to appropriately manage her own household, which includes caring for her two teenage sons. It is also noteworthy that the record reflects that there is a significant gap of almost three years in the claimant's treatment with Dr. Freij, from April, 2006 to June 2009.

(Tr. 25-26.) Thus, based on the foregoing, the ALJ rejected Dr. Freij's consistent assessments of plaintiff's pain for the following three reasons: (1) they were vague and conclusory because he did not provide a diagnostic basis for his responses to the questions; (2) the objective medical evidence of record does not contain clinical

examination findings or objective diagnostic evidence of impairments of such severity to support his opinions that the claimant's pain resulting from those impairments is so severe as to be distracting to the adequate performance of work activities; and (3) the claimant's documented level of activities of daily living is inconsistent with Freij's opinions of pain level.[6] This Court agrees with plaintiff that the ALJ's statements regarding the failure to place a "diagnostic basis" on his responses to the questions on the pain form do not provide an adequate reason to reject Dr. Freij's "pain" responses because this somehow makes those opinions vague and conclusory (*see* Doc. 13, at 15), particularly in light of the ALJ's concession in the following sentences that Dr. Freij had clearly indicated in his treatment notes that his diagnostic assessments of plaintiff's condition were muscular pain and fibromyalgia. Moreover, the ALJ's unequivocal finding that plaintiff's severe impairment is fibromyalgia (Tr. 19) establishes that this was not an adequate basis upon which to reject Dr. Freij's pain assessments.

With respect to the ALJ's second reason for rejecting the treating neurologist's pain assessments, namely lack of clinical examination findings or objective diagnostic evidence of impairments of such severity to support his opinions that the claimant's pain resulting from those impairments is so severe as to be distracting to the adequate performance of work activities, the undersigned need recognize that fibromyalgia by its nature lacks objective evidence and, as a consequence, a treating physician's testimony

---

[6]    Because plaintiff makes no argument that the ALJ improperly rejected Dr. Freij's medication side effects assessment (*see* Doc. 13, at 14-19), the undersigned considers only whether the reasons for her rejection of Dr. Freij's pain assessment is supported by substantial evidence.

can be particularly valuable. *Cf. Moore v. Barnhart,* 405 F.3d 1208, 1211 & 1212 (11th Cir. 2005) ("Because the impairment's hallmark is thus a lack of objective evidence, [in *Stewart v. Apfel,* 245 F.3d 793 (11th Cir. Dec. 20, 2000)] we reversed an ALJ's determination that a fibromyalgia claimant's testimony was incredible based on the lack of objective evidence documenting the impairment. . . . [A] treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent[.]").  Starting from this point and recognizing further that "[t]he lack of objective clinical findings is, at least in the case of fibromyalgia, [] insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations[,]" *Somogy v. Commissioner of Social Security*, 366 Fed.Appx. 56, 64 (11th Cir. Feb. 16, 2010), the Court in this case is compelled to find that the "lack of clinical examination findings or objective diagnostic evidence" reason is alone insufficient to support the ALJ's rejection of Freij's pain assessments.

The justification for finding that the foregoing reason stands alone is because the ALJ's final basis for rejecting Freij's pain assessments, namely that same are inconsistent with "claimant's documented level of daily activities of daily living" (Tr. 26), amounts to no reason at all given that "in the context of a fibromyalgia case . . . the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." *Brosnahan v. Barnhart,* 336 F.3d 671, 677 (8th Cir. 2003) (citation omitted); *see also Somogy, supra,* 366 Fed.Appx. at 64 n.12 (favorably citing *Brosnahan* and noting the following: "Somogy's complaints of disabling pain are also supported by her testimony regarding her daily

activities. Although Somogy testified that she was able to do laundry, shop for groceries, bake, and do other chores around the house, she also testified that these activities only could be done on her 'good days.' On her 'bad days,' of which she had three for every one 'good day,' she was unable to leave her bed because of her debilitating pain."). This is particularly an apt statement/finding in this case since the report relied upon by the ALJ to establish plaintiff's activities of daily living (*see* Tr. 26 (ALJ cites to Exhibit 3E and states that plaintiff "reported that she is able to care for her own personal needs without assistance, able to handle money and pay bills, and able to drive an automobile. She also reported that she visits with others on a daily basis, either on the telephone or in person, and that she enjoys reading and watching television.")) was completed in February of 2009 (*see* Tr. 125-132), some seven to nine months before plaintiff was diagnosed with fibromyalgia (*compare id. with* Tr. 337 & 340), eight months before Dr. Freij completed his first clinical assessment of pain (*compare* Tr. 125-132 *with* Tr. 333), and twenty-two (22) months before the hearing (*compare* Tr. 125-132 *with* Tr. 35). Even discounting the ALJ's sole reporting of the items in the report favorable to her ultimate conclusion,[7] the reliance upon evidence contained in a daily activities report completed long before the impairment about which a disability claim is based came into existence cannot serve as an adequate reason to reject a treating physician's assessment

---

[7]    In this regard, the ALJ neglected to point out, for instance, that plaintiff reported that her older children helped her take care of the younger children, cook, and clean; that she cannot sleep long because of her back condition; that she does not prepare any meals; that she cannot stand long; that she does not drive due to pain in her legs and back; and that she does not shop. (Tr. 126-128; *compare id. with* Tr. 26.)

regarding pain associated with that impairment. Based upon the foregoing, therefore, this Court finds that the ALJ committed reversible error in failing to accord Dr. Freij's pain assessments any weight.

Even if this Court had concluded that the ALJ offered adequate reasons for failing to accord Dr. Freij's pain assessments any weight, the undersigned would still be unable to affirm the ALJ's decision denying benefits in light of her failure to sufficiently link her RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work, namely light work. This case is in no manner similar to *Green* where the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Here, in contrast, even if viewing Dr. Freij's pain assessments as properly discredited, what is left is the following: (1) the office notes of Dr. Freij reflecting tenderness over the shoulders, upper and lower back, arms, and legs (Tr. 336-337, 340-341 & 345); (2) physical therapy notes reflecting plaintiff's pain complaints due to her chronic condition (Tr. 365-375); (3) medical records documenting an emergency room visit by plaintiff on September 5, 2010 due to "fibromyalgia exacerbation" (Tr. 352-356); and (4) the April 15, 2009 office notes of one-time examiner and family practitioner, Dr. Huey Kidd, reflecting a diagnosis of low back pain and numerous clinical findings which included full range of motion and 5/5 strength in upper and

lower extremities (Tr. 315). Because clinical findings such as those made by Dr. Kidd are not at all uncommon in fibromyalgia patients, *see, e.g.*, *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion."), and the ALJ did nothing to specifically link plaintiff's uncontroverted tenderness over the shoulders, upper and lower back, arms, and legs with "**the residual functional capacity to perform light work . . . except . . . performing any overhead work, including overhead lifting and carrying**" (Tr. 23; *see also* Tr. 24 ("Based on the claimant's physical impairments, the undersigned finds that the claimant is capable of lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for a total of about six hours in an eight-hour workday, and sitting for a total of about six hours in an eight-hour workday.")),[8] this Court cannot find that the ALJ's RFC assessment is supported by substantial evidence. Accordingly,

---

[8]      To be sure, the ALJ did link her RFC assessment to Dr. Kidd's clinical findings (Tr. 24 ("The undersigned notes that based on his physical examination of the claimant in April 2009, Dr. Kidd reported that the claimant had full range of motion of her upper and lower extremities, that her strength in the upper and lower extremities was full and normal, that she was able to squat and stand without difficulty, and that she ambulated without any difficulty. These objective clinical examination findings support a residual functional capacity for light work.")), and if this Court was to simply look at these pre-fibromyalgia-diagnosis clinical findings in isolation it would necessarily have to agree with the ALJ that such findings are consistent with the ability to perform light work. However, this Court cannot consider Dr. Kidd's clinical findings in isolation in trying to link the pertinent evidence of record to an appropriate RFC assessment particularly since, as aforesaid, such findings are not unusual in fibromyalgia patients, plaintiff's fibromyalgia had yet to be diagnosed, and the ALJ failed to link any of the evidence generated after the fibromyalgia diagnosis to the RFC assessment contained in the hearing decision. Thus, the ALJ's RFC assessment is not supported by substantial evidence. Stated differently, without any linkage by the ALJ of the evidence of record generated after the diagnosis of fibromyalgia to the RFC assessment contained in the hearing decision, no inference arises that plaintiff can perform the requirements of light work.

the fifth-step denial of benefits in this case is due to be reversed and remanded for further proceedings not inconsistent with this decision.[9]

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 2nd day of May, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[9]    On remand, the ALJ can better explain how difficulty in organizing information, sequencing tasks, remembering tasks, and performing tasks in a timely manner (*see* Tr. 21 & 24) correlates to an ability to perform "simple, routine, repetitive tasks and . . . [to] adapt [] to minimal changes in the work setting[]" (Tr. 24).